UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

SEBASTIAN A. CAMPBELL,

                Plaintiff,                Case No. 1:15-cv-1276

v.                                      Honorable Janet T. Neff

MICHAEL EAGEN et al.,

                Defendants.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Sebastian A. Campbell presently is incarcerated at the Central Michigan Correctional Facility.  He pleaded guilty in the Oakland County Circuit Court to violating his probation on the offense of parental kidnapping, MICH. COMP. LAWS § 750.350a.  On August 14, 2014, he was sentenced as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to a prison term of one to fifteen years.  Plaintiff sues Defendants Michigan Parole Board (MPB) Chairman Michael Eagen and MPB Members Anthony King and Charles Brown.

Plaintiff contends that Defendants improperly categorized his offense as an "[a]ssaultive [c]rime" that "[i]nvolved [k]idnapping" and [i]nvolved a minor/child victim." (Compl., ECF No. 1, PageID.5)  At least in part because of these classifications, Plaintiff was denied parole on October 23, 2014.  Defendants issued an eighteen-month continuance before reconsideration of parole.

Plaintiff contends that the custodian, by statute, is the victim of the offense, not a child.  He also argues that his offense was not assaultive; it was a mere interference with parental custody.  He therefore contends that the erroneous classifications denied him equal protection, his right to due process, and his right to trial by jury.

For relief, Plaintiff seeks a new parole hearing and an injunction barring the MPB from utilizing the allegedly unconstitutional criteria.

**Discussion**

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Due Process

Plaintiff claims that Defendants violated his due process rights by failing to provide valid substantial and compelling reasons for departing from the parole guidelines when denying his parole.  To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the

conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 15-year maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11.  The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right.  In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Plaintiff's related allegation that Defendants relied on false information to deny his parole also fails to state a claim.  Because Plaintiff has no liberty interest in being paroled, he cannot show that the false information was relied upon to a constitutionally significant degree.  *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the

Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation).  Therefore, Plaintiff fails to state a claim for a violation of his due process rights arising from the denial of his parole.

### B.     Equal Protection

Plaintiff contends that Defendants' determination violated his right to equal protection.  Although his reasoning is far from clear, he suggests that Defendants based their determination on criminal elements that were not part of his offense.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).  The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole.

*Greenholtz*, 442 U.S. at 7; Sweeton, 27 F.3d at 1164-65.  In addition, prisoners are not a suspect

class.  *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v.*

*Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir.

1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class).

Specifically, convicted sex offenders are not a suspect class and, therefore, any laws or

classifications that they may be subject to are reviewed under the rational basis test.  *Cutshall v.*

*Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999).  Thus, in order to establish an equal protection

violation, Plaintiff must show that the Michigan scheme differentiates between similarly situated

persons and is not rationally related to any conceivable legitimate governmental purpose.  *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843.

        Plaintiff's equal protection claim fails because the classification survives rational

basis review.

> [U]nder rational basis review, . . . the classification need not be the most narrowly
> tailored means available to achieve the desired end. . . .  The statute need not be the
> best possible reaction to the perception, nor does the perception itself need to be
> heavily buttressed by evidentiary support.  It is enough that the perceived problem
> is not obviously implausible and the solution is rationally suited to address that
> problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal

protection by limiting relief which may be sought by prisoners).  "'The purpose of parole is to keep

a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may

have an opportunity to show that he can refrain from committing crime.'"  *People v. Gregorczyk*,

443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted).  Protection of public safety is a

stated purpose of Michigan's parole statutes.  *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689

(Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on

parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)).   Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").   The MPB could rationally conclude that unlawfully removing a child from the home of the custodial parent presents significant risks to the safety of all concerned, including the child, and the offense therefore should be classified as an assaultive crime with a child victim.

Moreover, as the courts repeatedly have indicated, such cases must be evaluated in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolutions should be accorded deference by the courts. *See Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125-26 (1977).   In addition, Michigan's statutory scheme furthers the rights of victims, *see* MICH. COMP. LAWS § 780.771, which is also a legitimate and rational state purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir. 1997) (reversing the district court's finding that the Texas parole scheme violated prisoners' equal protection rights).   Finally, Michigan's parole statutes also include economic considerations,

which are a legitimate government interest.  *See Franciosi v. Mich. Parole Bd.*, 586 N.W.2d 542,

546 (Mich. Ct. App. 1998) , *aff'd*, 604 N.W.2d 675 (Mich. 2000) (holding that MICH. COMP. LAWS

§ 791.235(6), which prohibited attorneys from representing prisoners at parole release hearings, was

rationally related to legitimate economic considerations).

There are numerous factors and considerations used by the MPB in determining

whether parole is appropriate.  Considering the nature of an inmate's particular offense is clearly

rational and not arbitrary.

Finally, the Supreme Court recently has recognized that rational basis scrutiny is not

properly applied to employment decisions and other discretionary decisionmaking:

> There are some forms of state action, however, which by their nature involve
> discretionary decisionmaking based on a vast array of subjective, individualized
> assessments.  In such cases the rule that people should be "treated alike, under like
> circumstances and conditions" is not violated when one person is treated differently
> from others, because treating like individuals differently is an accepted consequence
> of the discretion granted.  In such situations, allowing a challenge based on the
> arbitrary singling out of a particular person would undermine the very discretion that
> such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 128 S. Ct. 2146, 2154 (2008).  Parole considerations are the type

of discretionary decisions discussed in *Engquist* that typically are "subjective and individualized,

resting on a wide array of factors that are difficult to articulate and quantify."  *Id.*  Discretion to

grant parole is squarely lodged with the Parole Board.  *See Sweeton*, 27 F.3d at 1164-65 (noting the

broad authority of the MPB to make discretionary decisions).  Applying *Engquist*, even an arbitrary

parole decision would not violate Plaintiff's equal protection rights.

### C.  Trial by Jury

Plaintiff argues that he was denied his Sixth Amendment right to trial by jury on the offense for which he is being denied parole.  He contends that, because his crime was not assaultive, the MPB's attribution of "Assaultive Crime" keeps him in prison for an offense he did not commit.

Plaintiff cites no authority for his position, and his argument is wholly unpersuasive. Plaintiff pleaded guilty to the offense of parental kidnapping, the taking or retaining of a child by an adoptive or natural parent. *See* MICH. COMP. LAWS § 750.350a.  Because he was a fourth-offense felony offender, his maximum sentence was increased to fifteen years, and his minimum sentence was set at one year.  Plaintiff does not challenge his conviction and sentence in this proceeding, nor could he.  A challenge to the fact or duration of confinement may be brought only as a petition for habeas corpus; it is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).  Plaintiff therefore was lawfully convicted and sentenced, after he waived his right to a jury trial.  Defendants have not imposed any sentence beyond that set by the trial court.  A person detained in state custody pursuant to a lawful sentence is not the subject of a "prosecution" when he is considered for parole; denial of parole is merely the refusal to alter the sentence imposed on conviction.  *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 945 (2d Cir. 1976); *Cook v. Whiteside*, 505 F.2d 32, 34 (5th Cir. 1974); *Ganz v. Bensinger*, 480 F.2d 88, 90-91 (7th Cir. 1973).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses this action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, for example, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump-sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  January 28, 2016                   /s/ Janet T. Neff
                                           Janet T. Neff
                                           United States District Judge